IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LORRI M. JENKINS, )
    Appellant, )
 )
v. ) 1:09cr341 (LMB)
 )
UNITED STATES OF AMERICA, )
    Appellee. )

FILED
SEP 28 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MEMORANDUM OPINION

    Lorri M. Jenkins (Jenkins), pro se, appeals her conviction by a magistrate judge for speeding 48 miles per hour in a 30 miles per hour zone, in violation of 18 U.S.C. § 13 assimilating Va. Code § 46.2-878.[1] Jenkins brings this appeal under 18 U.S.C. § 3402, asking for a reversal of her conviction on the basis of three alleged errors by the magistrate judge: 1) improperly excluding her driving record; 2) improperly shifting the burden of proof; and 3) improperly admitting speed detection from a ProLaser II, which had not been calibrated in accordance with Va. Code § 46.2-882, and in violation of Daubert v. Merrel Dow, 509 U.S. 579, 592-93 (1993), and 32 C.F.R. § 634.27. For the reasons stated below, Jenkins's conviction and sentence will be affirmed.

    I.  Factual Background

    Sergeant Mike Unruh (Unruh), a Military Police Officer with eight years of experience, testified that on March 9, 2009, at

---

[1] Appellant's offense occurred on a United States military base, Fort Belvoir, where Virginia law is enforceable under both the Assimilative Crimes Act, 18 U.S.C. § 13(a) and federal regulation 32 C.F.R. § 210.3(b).

approximately 6:42 p.m., he was on duty using a hand-held lidar (laser) unit (Model ProLaser II) to monitor traffic on Pohick Road near the Tulley Gate area of Fort Belvoir, a federal military facility within the special maritime and territorial jurisdiction of the United States.  Unruh had been certified by the NHTSA in visual estimation of speed as well as in the operation of radar and lidar equipment.  Trial Transcript (herinafter Tr.) at 6.  Unruh estimated that he wrote approximately 300 speeding citations over the past year, with half based on lidar detection and half using radar detection equipment.  Id. at 7.  He described the lidar unit used on March 9, 2009 as an "older model lidar", which he tested two ways and found to be working properly,

> It has two tests you can conduct.  You plug the radar –
> or the lidar in, and once you turn it on, all the
> lights show up and it performs an internal test.  If
> there is an error in the internal test, the, the lidar
> will not operate . . . I also conducted a scope test,
> just pinpointing a vehicle or an object, activating my
> lidar, and making sure all of the (inaudible) within
> the scope work.

Tr. 7-8.  Unruh retested the lidar unit at the end of his shift and received findings consistent with the earlier testing.  Id. Unruh also identified government Exhibit 1, the Certificate of Accuracy and Calibration for the lidar unit he used.  Tr. at 9. The Exhibit shows that on November 4, 2005, the unit was certified as accurate and calibrated.  Jenkins did not object to the admission of the certificate.  Tr. at 11.  Unruh described seeing Jenkins's car traveling at a rate of speed exceeding the

30 mile per hour limit and then activating the lidar unit, which captured Jenkins's car traveling at 48 mile per hour. Tr. at 13. Unruh testified that the lidar reading was consistent with his visual estimate of Jenkins's speed. Id.

On cross examination, Jenkins asked Unruh how he could be so sure his lidar equipment was properly calibrated. He explained:

> With lidars, it's not like a typical radar unit where it has to be calibrated every six months according to different SOPs of different departments. When I turn on my equipment and it actually works, it does an internal test, which it does an internal calibration making sure that everything's operational. That's why it has no expiration date.

Tr. at 15. In responding to Jenkins's questions about how the speed of a particular car can be detected if that car is in between other cars Unruh responded: ". . . it's much like taking a laser pointer and you can have a group of cars coming, whether they be bumper to bumper or spread out, you can pinpoint each of those cars and that's what the laser does." Tr. at 17.

Jenkins testified that she knew the speed limit, was very careful not to speed on a military base, and had set her cruise control. Tr. at 21. She also described how her car was between two other cars, and she asked "How was I speeding? The car was in front of me. There was a car - I can only go as fast as the car in front of me, and I was - I really wasn't speeding." Id. On the basis of the evidence before her, the magistrate judge found Jenkins guilty.

II. Discussion

A magistrate judge's findings of fact are reviewed for clear

error and conclusions of law are reviewed de novo. See Fed R. Crim. P. 58(g)(2)(d); United States v. James, 164 F. Supp. 2d 718, 722 (D. Md. 2001). Although issues raised for the first time on appeal are normally reviewed for plain error, procedural errors made by pro se litigants are treated liberally. Bauer v. C.I.R., 97 F.3d 45, 49 (4th Cir. 1996). Accordingly, the merits of each claim will be addressed despite Jenkins's failure to adequately preserve her objections at trial.

Jenkins argues that the magistrate judge, by failing to admit her driving record into evidence, "improperly refused to consider proper mitigating evidence." The trial transcript reveals, however, that the magistrate judge properly excluded the driving record from the guilt phase because such evidence is not relevant to guilt, and explicitly accepted Jenkins's representation of a clean record at sentencing.[2] Even though the driving record was not formally admitted into evidence, there is no indication that the magistrate judge failed to consider it at sentencing. To the contrary, by specifically mentioning the driving record just before imposing a relatively light fine, the court did properly consider the record.[3]

---

[2] "I understand that you have no record, and I accept your representation on that.". Tr. at 26.

[3] Jenkins also argues that "the Magistrate never asked if I had anything further to state prior to sentencing, in which I would have asked for a continuance to prove my speedometer and cruise control were working." In fact, the magistrate judge specifically asked Jenkins, "Did you want to say anything else before I sentence you?" Tr. at 26. Jenkins responded by asking

Jenkins next argues that the burden of proof was improperly shifted when the magistrate judge stated, "Ms. Jenkins, I understand what you're saying, but I don't have any indication that your cruise control is operating correctly." Tr. at 26. However, the judge explained further, "On the other hand, there's every indication that the laser was operating correctly, that it was calibrated, that it was working properly, and that it did clock you going 48 miles per hour in a 30-mile-per-hour zone, so I find you guilty of that charge[.]" Id. Although the Court mentioned the lack of evidence to support appellant's defense, there is no indication that the judge shifted the burden of proof to the appellant. Accordingly, this claim of error is without merit.

Jenkins's last challenge concerns admission of government Exhibit 1, the Certificate of Accuracy and Calibration for the lidar unit used by Unruh and the Court's acceptance of the speed detection results of that lidar unit. For the first time on appeal, appellant challenges the scientific reliability of the lidar unit under Daubert, 509 U.S. 579. How a trial court resolves a Daubert challenge is reviewed for abuse of discretion. General Electric v. Joiner, 522 U.S. 136, 143 (1997); Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) ("A district court abuses its discretion [in a Daubert ruling] if its

---

why she was ticketed when there were two other cars around her also speeding. Id. Jenkins did not ask for a continuance to obtain evidence about her speedometer and cruise control.

conclusion is guided by erroneous legal principles, or rests upon a clearly erroneous factual finding[.]"). Here, because no Daubert objection was made during the trial, it was not an abuse of discretion for the magistrate judge to accept the scientific reliability of the lidar device without engaging in a Daubert inquiry.

Jenkins also challenges the admissibility of the lidar results on the basis of 32 C.F.R. § 634.27. That regulation pertains to the training, certification, and recertification of officers in the use of speed-reading devices. Nothing in the record indicates that Unruh was not properly trained or certified. To the contrary, when asked on direct examination "Are you now a qualified laser operator . . . and were you qualified at that time?" Unruh responded, "Yes, sir, I was," Tr. at 7, and there was no evidence in the record to contradict that statement.

Lastly, Jenkins challenges the admissibility of the lidar speed detection on the basis of Va. Code § 46.2-882, which provides that

> In any court or legal proceeding in which any question arises about the calibration or accuracy of any laser speed determination device . . . a certificate . . . showing the calibration or accuracy . . . shall be admissible as evidence of the facts therein stated. No calibration or testing of such device shall be valid for longer than six months.

If Jenkins's case had been brought in a court of the Commonwealth of Virginia, there is no question that neither the Certificate of Accuracy and Calibration nor the results of the lidar unit would

have been admissible because the device was calibrated in 2005, almost three years past the six month period allowed under the Virginia statute.

Jenkins argues that § 46.2-882, as a statute that governs regulation of traffic, must apply in federal prosecutions brought under Virginia traffic laws assimilated through the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13(a). Jenkins supports her argument with United States v. Wornum, 754 F. Supp. 517 (W.D. Va. 1991), which held that § 46.2-882 was assimilated by 36 C.F.R. § 4.2(a) to speeding cases brought in the national parks. Wornum does not control the present case, however, which involves a federal prosecution brought under the ACA, not 36 C.F.R. § 4.2(a). Title 36 C.F.R. § 4.2(a) provides that "State law that is now or may later be in effect is adopted and made a part of the regulations in this part." Focusing on that specific language, the Wornum court concluded that § 46.2-882 applied to the case. The ACA does not contain the sweeping language of 36 C.F.R. § 4.2(a). Instead, the ACA provides that: "Whoever . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . by the laws thereof in force . . . shall be guilty of a like offense and subject to a like punishment." Additionally, 32 C.F.R. § 210.3(b), which specifically assimilates state traffic laws on military installations, states: "All persons on a

military installation shall comply with the vehicular and pedestrian traffic laws of the state in which the installation is located." Neither the ACA nor 32 C.F.R. § 210.3(b) contain the broad "'adopt' state law" language found in 36 C.F.R. § 4.2(a). Moreover, a clear line of case law supports the conclusion that Va. Code § 46.2-882 is a state procedural rule and as such, does not apply to federal prosecutions because the ACA "does not generally adopt state procedures. . . . and federal, rather than state, rules of evidence are applicable to all prosecutions under the Act." Kay v. United States, 255 F.2d 476, 479 (4th Cir. 1958), cert. denied, 358 U.S. 825 (1958).

In determining whether a statute is substantive or procedural for purposes of the ACA, the Fourth Circuit has looked to whether the statute "addresses only how – not what – the state must prove to obtain a conviction." United States v. Card, No. 90-5313, 1991 U.S. App. LEXIS 1327, at *3 (4th Cir. Jan. 31, 1991) (unpublished) (finding a state statute that affords defendants the opportunity to elect either blood or breath tests to be procedural). The statute at issue in this appeal precludes admission of a particular type of evidence at trial, and therefore, is procedural, and not assimilated by the ACA. See United States v. Crawford, 166 F.3d 335, *1 (4th Cir. Jul. 31, 1998) (unpublished)(citing Price, 812 F.2d 174; Kay, 255 F.2d 476). Accord Saundry v. United States, 2008 WL 1733269, *2 (E.D. Va. April 8, 2008) (unpublished) (no pet.) (the ACA "does not

adopt state procedural rules or rules of evidence.")(citing Card, 1991 U.S. App. LEXIS 1327; Kay, 255 F.2d, 479). See also United States v. Daras, No. 98-4286, 1998 U.S. App. LEXIS 26552, *6 (4th Cir. Oct. 16, 1998) (unpublished) ("failure to follow state procedures relating to the proper administration of breathalyzers goes to the weight, and not the admissibility, of the test"). Because Va. Code § 46.2-2882 does not apply to this case, it was not error for the magistrate judge to accept government Exhibit 1, the Certificate of Accuracy and Calibration, and to rely on the results of the lidar unit as part of the basis for finding Jenkins guilty of speeding.

For all these reasons, the decision of the magistrate judge will be AFFIRMED by a separate Order to be issued with this Opinion.

Entered this 28th day of September, 2009.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge